[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action, by writ and complaint, claiming a dissolution of marriage and other relief, as on file, came to this court on August 21, 1998, with a return date of September 8, 1998, and CT Page 16377 thence to later dates when the defendant appeared through counsel. Both parties appeared for a limited contested trial which was heard on November 18, November 19 and November 23, 1999.
Having heard the evidence, the court finds the following facts. The court has jurisdiction over this matter. The plaintiff, whose birth name is Grace Billings, and the defendant were married on August 19, 1967 in Washington, Connecticut. The parties had three children issue of their marriage, all of whom have reached majority. The plaintiff has resided continuously in the state of Connecticut for one year preceding the date of her complaint. Neither party has received assistance from the state of Connecticut or any municipality of the state of Connecticut. The marriage has broken down irretrievably.
The parties requested that the court, at the time of trial, hear and decide two motions that were filed during the pendency of this action.
As to the plaintiff's motion for alimony pendente lite dated July 1, 1999 (#113), the court heard testimony from the plaintiff as to her financial needs upon separating from the defendant and moving to the Boston area. Using the criteria set forth under General Statutes §§ 46b-83 and 46b-82, the court considered the length of the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estates and needs of each of the parties in weighing the testimony of each party on this issue. Based upon these factors, the court awards no alimony pendente lite.
As to the defendant's motion to compel dated July 28, 1999 (#116), the court heard testimony from both parties as to the source and nature of this debt. The court grants the defendant's motion and orders the plaintiff to pay the Citibank credit card debt of $1,663.90 and to hold the defendant harmless therefrom.
The parties presented proposed orders to the court, which reflected their agreement as to certain issues. The court heard testimony in order to decide the outstanding issues on which there was no agreement. The primary issue in dispute was the division of the marital estate and more particularly the valuation and division of the marital residence.
The issues upon which the parties agree follow. Neither party CT Page 16378 is requesting an order of periodic alimony except that the plaintiff is seeking a nominal order as to each party for debt indemnification purposes only. The parties will divide their personal property without court intervention. In addition, there are unopposed requests of the plaintiff as to health insurance coverage through COBRA at her own expense and the transfer of the Lexus automobile to her.
This thirty two year marriage is seen quite differently by each party. For the plaintiff, who is a 54 year old college educated woman, the marriage was dealt a devastating blow three weeks after the wedding. The defendant, who is a 54 year old college educated man, was surprised at that testimony, and testified that he was unaware that the marriage was broken down three weeks after the wedding. The parties did agree that in 1970 the plaintiff left for a period of time to be with another man. The parties participated in counseling at various times throughout the marriage; the defendant more so than the plaintiff. The plaintiff testified that in the 1980's difficulties increased from her decision to have a career in writing, from his love of and her fear of flying, from her concern about the defendant's health from his weight and drinking and from his accusations of infidelity. Reviewing the testimony of both parties, the court concludes that the plaintiff became less interested in the defendant and more interested in writing novels and screenplays and traveling to Europe and in particular, France. The defendant described the plaintiff as a good mother until she began her vocation as a writer.[1] The plaintiff, with admirable candor, characterized the defendant as a good father and a generous husband. The defendant remodeled a studio room for the plaintiff twice during the marriage: once for the plaintiff's period of sculpting and then for her period of writing. In addition, he paid for biannual trips to Europe. The plaintiff benefitted [benefited] greatly from the defendant's generosity throughout the marriage. Her main reason for the breakdown of the marriage simply is not believable[2]. Rather, the court surmises that the plaintiff had become interested, if not enamored, in a way of life foreign to the defendant, as well as becoming involved with a new man. The plaintiff is primarily responsible for the breakdown of the marriage.
The plaintiff is in good health and resides now in Wellesley Hills, Massachusetts, just outside of Boston. She lives with a man with whom she is romantically involved. She recently obtained employment as a personal assistant with an annual salary of CT Page 16379 $47,000 plus health coverage and three weeks paid vacation. During the marriage she had various jobs, including part-time remedial teaching, work at the Swiss Hospitality Institute and a travel agency and, up to the time of the dissolution, work as an administrative assistant to William and Rose Styron at $20 an hour. She also worked part-time in her husband's business as a bookkeeper from 1986 to 1998. She drives a 1992 Lexus owned by the defendant's company. She has approximately $200,000 in a Merrill Lynch account, representing the balance of a $246,000 inheritance from her mother in June 1996.
The defendant is in good health and owns a construction business, which he began in 1980. He is the sole shareholder. The business is located in a barn on the marital property and shows a value of $18,000 in inventory. In 1998, the gross receipts for the business were $861,000. The defendant expects gross receipts in excess of $700,000 for the year 1999. His most recent tax returns show a personal income of approximately $86,000. His parents, who live nearby, have provided him with $20,000 a year for the past fifteen years. He owns an airplane, valued at approximately $38,000, which is kept in a hangar on the marital premises.
There was disputed expert testimony on the fair market value of the martial property. Both experts used the comparative sales approach but the plaintiff's expert, Joseph LaBue, concluded the fair market value to be $1.7 million, and the defendant's expert, David Jalbert, concluded the fair market value to be $1.120 million. After weighing the testimony of both experts, the court finds the fair market value to be $1.4 million. It is encumbered by a $100,000 equity line of credit, leaving an equity of $1.3 million.
In determining how to divide the marital estate the court considers the criteria set forth in the provisions of General Statutes § 46b-81 (c) which read,
 In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the CT Page 16380 parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.
The court has evaluated the credibility of the witnesses and has considered the evidence presented at trial in light of the above statutory criteria. The following orders shall enter:
1. A dissolution of the marriage.
2. The defendant shall transfer ownership of the Lexus automobile to the plaintiff.
3. The monies in the jointly held Merrill Lynch accounts shall be divided equally between the parties.
4. The plaintiff shall retain the monies in her Merrill Lynch account, representing the balance of her inheritance.
5. The plaintiff shall quitclaim her interest in the marital property at 30 West Mountain Road to the defendant. The defendant shall pay to the plaintiff $500,000, as her share of the equity of the property. This payment shall be made as follows: $50,000 within 30 days of notice of this judgment; $50,000 by May 31, 2000. The balance of $400,000 shall be secured by a mortgage on the property and shall be paid by monthly installments beginning June 2000 at 2% interest amortized over 15 years with a balloon payment to the plaintiff in seven (7) years for payment in full.
6. The plaintiff shall notify the defendant immediately if she needs medical coverage through COBRA. If she does, the defendant shall cooperate in the conversion of the plaintiff's medical coverage as available through COBRA. The plaintiff shall assume the cost of the coverage in that event.
7. All assets listed on each party's financial affidavit not otherwise addressed in these orders shall remain the respective party's with no claim by the other party.
8. Each party shall assume the debts listed on his or her financial affidavit and hold the other party harmless unless otherwise addressed in these orders. CT Page 16381
9. If the parties are unable to agree on a division of tangible personal property within thirty (30) days of this decision, the parties shall return to court within sixty (60) days for a judicial determination.
10. No periodic alimony is awarded to either party.
11. No counsel fees is awarded to either party.
12. The plaintiff's birth of Grace Billings is restored to her.
DiPentima, J.